1

2

3

4

5             UNITED STATES DISTRICT COURT

6           NORTHERN DISTRICT OF CALIFORNIA

7

8   JAMES E. KING,                          No. C 11-1885 SI (pr)

9           Petitioner,                     **ORDER OF DISMISSAL**

10      v.

11  L. SCOTT McEWEN, warden,

12          Respondent.
                                        /
13  ——————————————————————

14                          **INTRODUCTION**

15      James E. King, an inmate at Calipatria State Prison, filed this *pro se* action seeking a writ

16  of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent has moved to dismiss the petition

17  as untimely.  King has filed an opposition, a motion to stay and a traverse.  For the reasons

18  discussed below, the court finds the petition to be untimely and dismisses it.

19

20                          **BACKGROUND**

21      In 1997, King was convicted in Contra Costa County Superior Court of murder with

22  special circumstances, first degree burglary, sodomy, and attempted rape.  The trial court

23  sentenced King to a term of life imprisonment without the possibility of parole, consecutive to

24  a determinate term of thirty years.  King appealed.  The California Court of Appeal affirmed the

25  judgment on August 14, 2000.  The California Supreme Court denied King's petition for review

26  on November 29, 2000.  King filed a petition for a writ of certiorari in the Supreme Court of the

27  United States, which was denied on March 26, 2001.

28      King filed one petition for a writ of habeas corpus in state court.  His state habeas petition

was filed in the California Supreme Court on January 28, 2011, and denied on July 13, 2011.

King then filed his federal petition for a writ of habeas corpus. The petition is deemed filed as of March 29, 2011, the date of the proof of service attached to the petition. In his petition, King claims that his incriminating statements should have been suppressed due to an improper interrogation technique and delayed *Miranda* advisements. Respondent now moves to dismiss. In his opposition, King asserts that he is actually innocent. King also moves to stay the federal petition until state court remedies can be exhausted for some new claims.

**DISCUSSION**

I.    The Limitations Period Started On March 26, 2001

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

King's conviction became final and the limitations period began on March 26, 2001 when the Supreme Court of the United States denied King's petition for a writ of certiorari, *King v. California*, 532 U.S. 950 (2001). The presumptive deadline for King to file his federal habeas petition was thus one calendar year later on March 26, 2002. 28 U.S.C. § 2244(d)(1)(A). King missed that deadline by nine years. Unless he qualifies for substantial tolling, his petition is untimely.

King argues for an alternative starting date under 28 U.S.C. § 2244(d)(1)(c), which provides that the one year limitations period does not start until "the date upon which the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

constitutional right asserted was initially recognized by the Supreme Court . . . and made retroactively applicable to cases on collateral review." King urges that his one year limitations period should start after the Ninth Circuit held in *Thompson v. Runnels*, 657 F.3d 784, 801-02 (9th Cir. 2011), that the police cannot deliberately withhold *Miranda* warnings until the suspect has confessed, and then obtain a second confession after providing *Miranda* warnings. *Thompson* however, is not a Supreme Court case as required under 28 U.S.C. § 2244(d)(1)(C). Furthermore, the Supreme Court vacated *Thompson*, and remanded with instructions to reconsider in light of its holding in *Greene v. Fisher*, No. 10-637, slip op. at 4-5 (U.S. Nov. 8, 2011). *See Thompson*, 657 F.3d at 801-02, *vacated sub nom. McEwen v. Thompson*, No. 11-305, slip op. 1 (U.S. Nov. 14, 2011). King's petition therefore does not qualify for a later starting date under 28 U.S.C. § 2244(d)(1)(C).

King also suggests an alternative starting date under 28 U.S.C. § 2244(d)(1)(D), which provides that the one year limitations period does not start until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." In his opposition, King claims that he has newly discovered evidence of his actual innocence: a November 30, 2010 declaration from Cindy Wilson. King claims that his one year limitations period should start from the date on Wilson's declaration. In this declaration, Wilson states that she witnessed a fight between King and the victim, and saw King leave while the victim was still alive. The factual predicate of a claim is based on a habeas petitioner's knowledge of the facts supporting the claim, and not the evidentiary support for the claim. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2000) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Wilson's declaration states that she stopped a fight between the victim and King, that King left before Wilson did, and that the victim was still alive when King left. If Wilson's account was true, King knew long before trial

United States District Court
For the Northern District of California

1  that there was a witness to his last encounter with the victim.  Yet he did nothing to find this

2  witness, until 18 years later, she fortuitously contacted him in prison.  King does not qualify for

3  the one year limitations period to start from when he received Wilson's declaration because he

4  had known about the factual predicate of any claim based on his innocence – i.e. the existence

5  of the witness to his departure from the victim's home – for over 18 years since the 1992 murder.

6  King therefore does not qualify for the later starting date under 28 U.S.C. § 2244(d)(1)(D).

7

8  II.    <u>No Statutory Tolling</u>

9         The one year limitations period is tolled for the "time during which a properly filed

10 application for State post-conviction or other collateral review with respect to the pertinent

11 judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  There is no evidence that King properly

12 filed a state habeas petition during the one year limitations period between March 26, 2001 and

13 March 26, 2002; he therefore receives no statutory tolling.

14        King's 2011 state habeas petition did not toll the limitations period because the

15 limitations period had already expired.  *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.

16 2003).  Moreover, only a "properly filed" state habeas petition may toll the limitations period,

17 28 U.S.C. § 2244(d)(2), which King's petition was not, as evidenced by the California Supreme

18 Court denial that stated, "[t]he petition for writ of habeas corpus is denied. (*See In re Robbins*

19 (1998) 18 Cal.4th 770, 780; *In re Waltreus* (1965) 62 Cal.2d 218, 225.)."  Reply to Opposition

20 to Motion to Dismiss, Exhibit 1, p.1.  The California Supreme Court's citation to *Robbins* is a

21 "clear ruling that [the] petition was untimely." *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir.

22 2007).  Therefore, King does not qualify for statutory tolling under the provisions of 28 U.S.C.

23 § 2244(d)(2).

24

25

26

27

28
                                          4

III.     Equitable Tolling

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "'A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *See also Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

King appears to argue that he should qualify for equitable tolling because his incriminating statements were coerced by the police and that at the time of the trial, he "did not know that police beating could be a factor in making any statements they obtained from you inadmissable." King Decl., p. 4. The contention that this very seasoned participant[1] in the criminal justice system did not know the import of a police beating or coerced confession is not credible. Moreover, a *pro se* petitioner's ignorance of the law is not, by itself, an extraordinary circumstance warranting equitable tolling. *Rasberry*, 448 F.3d at 1154. This excuse does not warrant equitable tolling.

IV.     Actual Innocence Argument

King also argues for equitable tolling based on actual innocence. A credible showing of actual innocence under *Schlup v. Delo*, 513 U.S. 298, 327 (1995), can warrant equitable tolling of the habeas statute of limitations period and excuse a missed deadline under that statute. *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc). "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim."

---

[1] King had at least three prior convictions plus several juvenile adjudications. *See* Cal. Ct. App. Opinion at 2 n.2.

5

*Schlup*, 513 U.S. at 316. A petitioner claiming actual innocence must support his claims "with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Id.* at 324. A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks removed). On this complete record, the court makes a "probabilistic determination about what reasonable, properly-instructed jurors would do." *Id.* The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Put another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him." *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

A.    Evidence Presented at Trial[2]

> On September 28, 1992 . . . the body of 76-year-old Leticia Smith was found in her living room. The cause of death was strangulation, apparently by means of a ligature fashioned from a pair of pantyhose. The victim had suffered blunt trauma injuries to her head and face, and it appeared that she had been assaulted. Fluids from the victim's genital and anal area were collected and analyzed. The anal smears contained sperm.

Respondent's Reply to Opposition to Motion to Dismiss, Exhibit 3, California Court of Appeal Decision, p. 2 ("California Court of Appeal Opinion").

At the time of the murder, King had a history of sexual offenses, and had only been released from prison nine months earlier. The California Court of Appeal summarized his prior offenses as:

---

[2]Neither party provided the transcripts of the trial or the clerk's transcript. The court has only the California Court of Appeal's opinion to rely upon for a description of the trial evidence. Nonetheless, because the Wilson and King declarations fall so far short of being "trustworthy eyewitness accounts" that provide "new reliable evidence" of innocence, *Schlup*, 513 U.S. at 324, this court need not summon the entire trial record to analyze King's actual innocence argument.

6

In 1971, while a juvenile, he exposed himself, an offense that resulted in his commitment to a boy's school. The following year, while on a good conduct leave from the school, appellant raped a teacher in her classroom and stole $6 from her. The year after that, after receiving a one-hour pass from football practice, appellant went to a neighboring Veterans Administration hospital where he attempted to rape a woman. Less than two years later he committed an offense which resulted in a conviction of rape, attempted rape and armed robbery. In October 1979, 19 months after his release from prison, appellant kidnaped a 16-year-old girl, raped her and forced her to orally copulate him. In 1984, he was convicted of forcible rape.

*Id.* at 2, n.2.[3]

As a convicted sex offender, King was required to provide a DNA sample to the authorities. In 1995, the police matched King's DNA to DNA found in the victim's anus and on her bathrobe. They arrested King on March 6, 1995, and began questioning him after administering *Miranda* warnings. The next day, March 7, 1995, King indicated he wanted to talk, and the police questioned King again – this time without providing new *Miranda* warnings. King stated: "'I didn't sodomize this lady . . . I didn't sodomize this lady. I did not enter into that lady's body no kind or way or shape or form or fashion. I don't know how that came about. It just happened . . . And I was under the influence that day.'" *Id.* at 16.

The same day, King told the police that:

[H]e had been staying in a men's shelter a couple of miles from the victim's house. He spent time in her neighborhood, however, working and also using drugs. [King] had a roofing job in the neighborhood. He met the victim when he noticed that a lot of trash and paper, presumably from his work site, had blown into her yard, and went over to help her clean it up. He was at the work site for approximately one week, during which he spoke to the victim a couple of times and used her telephone to call his boss . . . On the day of the crimes [King] had returned to the work site to do some touch up work. He smoked cocaine throughout that morning. . . . The victim let him in. She was wearing a bathrobe. [King] stated that he remembered sitting on a chair to use the telephone. He remembered removing a pair of pantyhose from the chair, but did not remember much of anything after that. He recalled that there was a struggle and that the victim had fell back in the chair and onto the floor, hitting her head in the process. He noticed she was not wearing anything under her robe and attempted to cover her up. He told her he was sorry and then left. . . . He did not remember having sex with the victim, although he also stated that he thought sex was what the whole thing was about.

---

[3] In his traverse, King disputes the California Court of Appeal's characterization of his 1971 offense, but does not dispute any of the other offenses.

United States District Court
For the Northern District of California

1   *Id.* at 17.

2       On appeal, the California Court of Appeal reviewed the lack of *Miranda* warnings on

3   March 7, 1995, and held that King's statements were still admissible because King had

4   voluntarily reinitiated contact with the officers and that he had made his statements freely.  The

5   court concluded that "[i]n light of the physical injuries to the victim and the DNA evidence tying

6   appellant to those injuries, there was no real question as to what crimes had been committed or

7   as to who had committed them."  *Id.* at 22.

8

9       B.    New Evidence

10      King now claims that he is actually innocent, and provides two new pieces of evidence:

11  his own August 25, 2011 declaration, and a November 30, 2010 declaration from Cindy Wilson.

12  Opposition To Motion To Dismiss, Unnumbered Exhibits.

13      Cindy Wilson's declaration provides this story: Wilson knew the victim,[4] and recalled

14  being at the victim's house sometime in late September.  The victim's boyfriend, Jimmy, was

15  present.  Wilson witnessed a physical altercation between the victim and Jimmy.  She intervened

16  and broke up the fight.  When Jimmy left, the victim was still alive.  Wilson left the victim's

17  house and came back approximately six hours later, where she found the victim looking like she

18  "had been in a fight."  Wilson Decl., p. 1.  The victim told Wilson that a drug dealer named

19  "Heavy Jackson" had beaten her because she was a police informant, and because he wanted a

20  videotape she had made showing criminal activity in the neighborhood.  *Id.* at 2.  That night,

21  when Wilson left, the victim was still alive and had only minor injuries.  As she walked away

22  from the house, Wilson saw two African American males outside the victim's house.  She heard

23  one of them say, "Heavy, she's leaving."  *Id.*  Approximately one week later, Wilson heard that

24  the victim had been murdered.  Wilson never told anyone else what she had allegedly witnessed,

25

26  _____

27      [4]Both King and Wilson refer to the victim as Althea Taylor, age 69.  The California Court
    of Appeal identified the victim as Leticia Smith, age 76.

28                                              8

United States District Court

For the Northern District of California

and did not tell the police because she didn't want to play the "[s]nitching game." *Id.* In late January or early February 2010, Wilson learned that Jimmy had been convicted of murdering the victim. She obtained Jimmy's address in prison and wrote to him.[5]

King's 2011 declaration provides this story that often contradicts the statements he made to the police in 1995: King and the victim were a couple and had a sexual relationship. On September 27, 1992, he had a fight with the victim in which "she struck me, and I pushed her several times, and we started pushing each other and grabbing each other." King Decl., p. 1. A young lady broke up the fight. King left the victim's house while the victim was still alive. He returned the next day and found her body. Two and a half years after the crime, the Richmond Police Department arrested him. On March 7, 1995, while in custody, King requested a smoke break. The police investigators took him to the rooftop, drew their service weapons and threatened him. *Id.* at 3. King was "repeatedly punched, kicked and knocked to the floor." *Id.* The police demanded that King tell them who committed the murder. King states that he was told by the D.A. investigator that he (King) was the killer and that he got into a fight with the victim and that's what killed her. King sates, "I was told to make that statement and I did, and told if I did not make it in that manner, I would be getting my brains blown out for trying to escape. So, I made the statement about having gotten into a physical latercation(sic) with Ms. Taylor, maybe injuring her, and having no knowledge of any sexual assault of her." *Id.* Notwithstanding having provided the statement that he maybe had injured the victim and had no knowledge of any sexual assault, he now states that he had repeatedly told the police that he and the victim were a couple, that they had a minor fight on the day before her body was found, and that she was still alive when he left that day.

---

[5] Wilson does not provide a last name for the man she knew as "Jimmy" but circumstances such as King's receipt of her letter suggest that it was the Petitioner, James E. King.

United States District Court
For the Northern District of California

C.    Actual Innocence Analysis

King has the burden of showing that more likely than not, given the evidence at trial combined with his newly discovered evidence, no reasonable juror could have found him guilty. In sum, King must persuade this court that if his new evidence – his own self-serving declaration and the new declaration from Cindy Wilson – had been presented at trial, then "every juror would have voted to acquit him." *Lee*, 653 F.3d at 946 (Kozinski, J. concurring).

The King and Wilson declarations do not make a credible, let alone convincing, showing of actual innocence. Considering the evidence presented at trial along with the new evidence, any reasonable jury could have found him guilty. King's declaration is not credible evidence of innocence because it (1) does not explain why, before he allegedly was coerced, he denied even knowing the victim, (2) does not explain why he never mentioned in 1995 that there was a witness to the fight between him and the victim, and (3) does not explain the 15+ year delay in telling the current story. King's declaration also appears to contradict the factual basis for the *Miranda* claim he *did* make on appeal: whereas he now contends he was not given *Miranda* warnings until the second day of questioning he argued on appeal that the *Miranda* rights provided to him on the first day of questioning did not carry over to the second day of questioning, Further, the details of the King's declaration do not even match his federal petition signed just a few months earlier. King stated in his petition that he was taken to the roof, and his interaction with officers occurred at the door to the roof, whereupon he fell to the ground without any struggle. *See* Docket # 1, p. 8 ("I fell to my knees in a heap as they read me my rights."). In his declaration, in place of falling to his knees and being Mirandized, King now states: "I was then rushed by the trio, and repeatedly punched, kicked, and knocked to the floor, in what would be a series of beatings thereafter, and it was demanded that I tell on whomever committed the murder." King Decl., p. 3.

Wilson's declaration also is not credible and, more importantly, is not strong evidence of King's innocence. She states that only in early 2010 did she learn that King had been

convicted of killing Taylor, but that is highly suspect for a person as close to the victim and situation as she describes. Wilson states that (1) her aunt was the "close friend" of the decedent, (2) Wilson was close to the victim who she visited just hours before the victim was killed, (3) Wilson saw King and the victim fighting and broke up the fight just hours before the victim was killed, and (4) Wilson saw two alleged drug dealers lurking in the area when she left the house. *See* Wilson Decl., p 2-3. It is not credible that a person with this extensive connection to the victim would not have learned until 18 years after the killing that the person she saw fighting with the victim just before the victim died had been convicted of the killing. Further, the extreme detail itself makes a declaration made 18 years after the event suspect. Most importantly, even if one believed it, Wilson's declaration does not exonerate King but only shows that Wilson at most saw circumstances suggesting that someone other than King may have been the murderer. Her declaration confirms that she did not see who killed the victim, she did not recall the date on which she saw King leave the house after fighting with the victim, she left the house and therefore would not know whether King returned to kill the victim, and she did not learn of the killing until a week later.

The original federal petition has only one claim and that claim does not depend on the new evidence. King's *Miranda* claim – i.e., that the 2-step interrogation process was improper – rests on the sequence of the interrogations and *Miranda* advisements. He has never needed the evidence of his innocence to pursue that claim.

Finally, King offers no explanation as to why defense counsel and he never considered asserting a coerced confession defense at trial or on appeal. It would be unlikely that such an obvious defense would be ignored, especially when there actually was a *Miranda*-based challenge to the admission of King's statements to police. *See* California Court of Appeal Opinion, p.19.

Given King's history of sexual offenses, the DNA evidence linking King to sexual contact with the victim, King's inconsistent statements, and Wilson's lack of personal

knowledge of the crime, it cannot be said that, more likely than not, no reasonable juror would have convicted him. King has failed to present sufficient evidence to persuade this court that "that every juror would have voted to acquit him," *Lee*, 653 F.3d at 946. He has not made a credible showing of actual innocence that would qualify for equitable tolling of the limitations period.

King's federal habeas petition, filed over nine years after the expiration of the limitations period, is untimely and will be dismissed.

King's motion for a stay to exhaust state court remedies is DENIED. King has not shown good cause for his failure to exhaust those claims and has not shown those new claims to be other than meritless. *See Rhines v. Weber*, 544 U.S. 269 277-78 (2005). There is no reason to stay the action to allow him to exhaust new claims that also would be untimely.

A certificate of appealability will not issue because this is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## CONCLUSION

Respondent's motion to dismiss is GRANTED. (Docket # 6). The petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1). Petitioner's motion for a stay and abeyance is DENIED. (Docket #12).

The clerk will close the file.

IT IS SO ORDERED.

DATED: December 6, 2011

_____
SUSAN ILLSTON
United States District Judge